A–POSITIVE ELECTRIC, Petitioner,

v.

UNEMPLOYMENT COMPENSATION
BOARD OF REVIEW,
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 10, 1994.
Decided Feb. 2, 1995.

R. Thomas Gerstner, for petitioner.

David B. Washington, Asst. Counsel, and Clifford F. Blaze, Deputy Chief Counsel, for respondent.

Before DOYLE and KELLEY, JJ., and NARICK, Senior Judge.

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(b). Section 402(b) states that an employee shall be ineligible for compensation for any week in which his unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature.

KELLEY, Judge.

A–Positive Electric (employer) appeals from an order of the Unemployment Compensation Board of Review granting Evelyn Wiegmann's (claimant) claim for benefits pursuant to section 402(b) of the Pennsylvania Unemployment Compensation Law (Law).[1] We affirm.

Claimant was last employed by employer for approximately eight months as an office administrator and a field electrician. Claimant was hired to perform administrative duties for employer and, under a separate contract, to bid on residential wiring contracts with an outside contractor. Claimant and approximately five other employees would then perform the electrical work on the projects. Claimant was paid a $100 bonus for each of the residential wiring contracts she secured and was to be paid a commission of the profit upon completion of the projects.

In July 1993, claimant requested a raise based on her financial needs, including child care through the welfare department, and on increased cost of living expenses. Employer advised claimant that he felt he would be able to give her $50 more a week, plus child care expenses. Claimant refused a job offer with another employer because of employer's promise to give her a pay raise and because her current job was closer to her home which would give her more opportunity to be with her family.

On or about August 10, 1993, employer told claimant that he could not give her a raise nor could he pay her child care costs. Employer could not afford to do so at that time because the outside contractor was dissatisfied with the fact that two of the five residential electrical wiring contracts had not been completed. Employer had to hire outside commercial electricians whose pay scales were higher than those of his own employees in order to finish the residential wiring projects. Due to the additional expenses incurred in salary and back charges, employer did not make a profit and claimant did not

receive her 45% commission at the completion of the contract.

On August 16, 1993, claimant began a two-week approved leave because she was getting married. Claimant was to return to work on August 26, 1993. On August 25, 1993, claimant voluntarily quit her job because she was dissatisfied with not receiving the pay increase as promised and because she had received her last paycheck late. Prior to quitting her job, claimant had discussed her dissatisfaction with employer.

On December 14, 1993, the Job Center issued a determination that claimant was not eligible for benefits under section 402(b) of the Law because she voluntarily quit her job, without cause of a necessitous and compelling nature, while continuing work was available. Claimant appealed this decision to a referee.

On February 15, 1994, the referee, after a hearing, affirmed the Job Center's determination. Claimant appealed the referee's decision to the board.

On April 22, 1994, the board reversed the decision of the referee and granted claimant benefits. The board resolved a conflict in testimony as to what promises employer had made to claimant concerning a salary increase in favor of claimant and found claimant's testimony credible. The board concluded that claimant had met her burden of proving necessitous and compelling cause for voluntarily quitting her job where claimant had not received a raise that had been promised to her by employer and had received one paycheck late. It is from the order of the board that employer now brings this appeal.

■■■ Our scope of review is limited to determining whether constitutional rights were violated, an error of law was committed, or necessary findings of fact were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Commonwealth Ct. 92, 525 A.2d 841 (1987). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985). The board is the ultimate fact finder and is entitled to make its own determinations as to witness credibility and evidentiary weight. *Id.*

In this appeal, employer raises the following issues: (1) whether the board erred in concluding that employer's failure to increase claimant's wages at some indefinite time in the future constituted cause of a necessitous and compelling nature for claimant to voluntarily terminate employment; (2) whether the breach of an alleged promise to increase an employee's wages at some indefinite time in the future constituted a substantial reduction in pay for purposes of determining whether claimant had cause of a necessitous and compelling nature to voluntarily terminate employment; and (3) whether the late payment, by ten days, of one paycheck created a necessitous and compelling reason to voluntarily terminate employment.

■■■ A claimant who alleges that she has terminated her employment for necessitous and compelling reasons has the burden of establishing the existence of such reasons. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977). Necessitous and compelling reasons for leaving one's job must result from "circumstances which produce pressure to terminate employment that is both real and substantial, and which would compel a reasonable person under the circumstances to act in the same manner." *Id.* at 359, 378 A.2d at 832–33. Whether a claimant's reasons for terminating employment were of a necessitous and compelling nature is a legal conclusion subject to review by this court. *Ayres v. Unemployment Compensation Board of Review*, 143 Pa.Commonwealth Ct. 310, 598 A.2d 1083 (1991).

Employer asserts that claimant's reason for quitting her job was her mere dissatisfaction with her rate of pay which is not a necessitous and compelling reason. Moreover, employer argues that his inability to increase claimant's salary did not constitute a substantial reduction in wages which would give rise to necessitous and compelling cause for claimant to terminate her employment. We disagree.

■ The law is well settled that mere dissatisfaction with one's wages is insufficient to establish the necessary justification for terminating employment. *Monaco v. Unemployment Compensation Board of Review*, 523 Pa. 41, 565 A.2d 127 (1989); *World's Finest Chocolate, Inc. v. Unemployment Compensation Board of Review*, 151 Pa.Commonwealth Ct. 370, 616 A.2d 1114 (1992). However, an employee may collect unemployment benefits if he voluntarily ceased employment because the wages or working conditions had substantially changed to the point that voluntary termination was necessary. *Monaco*.

In the present case, employer agreed to raise claimant's salary and to cover claimant's child care expenses. Claimant testified as follows:

> [I]n the beginning of July I went to—I talked to Tom Schilinski and I told him that I couldn't afford to work for the rate of pay.... And he agreed that on—if I'd wait till August, the beginning of August, that he would give me a pay raise of $50 a week and my childcare. And in the meantime I turned down a better—you know, a job about equivalent with that pay raise in waiting for that one month that he told me to wait for my raise.

Reproduced Record (R.) at 43A.

In contrast, employer stated:

> Q. [D]id you offer a pay raise?
> A. I told her I'd look into taking care of some of her expenses and some additional monies on her weekly salary, based on our construction activities and what work we were going to get and had on hand.
> Q. And did you put a dollar amount in those discussions?
> A. Well, there were kind of dollars all talked about all over. The first thing she had asked for was she wanted 13.50 an hour. And as you know, she was only getting six something, based on a 40 hour week. And I said that was out of the question. So we went back and forth and I said I'd look into seeing what we could do. But I don't remember specifically coming up with

any dollar amount, except other than the childcare.

R. at 56A.

■ The board resolved the conflict in testimony as to employer's promises to claimant with respect to salary and child care in favor of claimant and found claimant's testimony to be credible. Claimant did not testify that she believed the agreement regarding salary and child care was conditional. Since the board is the ultimate fact finder, its credibility determination will not be disturbed by this court. Thus, the result of employer's promises to claimant was a new employment agreement.

■ This court has held that an employer's implementation of an unreasonable, unilateral change in the employment agreement constitutes a reason of a necessitous and compelling nature for an employee to voluntarily terminate his employment. *No. 1 Cochran, Inc. v. Unemployment Compensation Board of Review*, 135 Pa.Commonwealth Ct. 252, 579 A.2d 1386 (1990), *petition for allowance of appeal denied*, 527 Pa. 653, 593 A.2d 424 (1991). A substantial reduction in pay can constitute such a necessitous and compelling reason. *Id.* Moreover, this court has held that where an employee benefit has special significance and intrinsic value to a claimant, an employer's unilateral alteration of that benefit and corresponding reduction in compensation gives a claimant necessitous and compelling cause for terminating employment. *Steinberg Vision Associates v. Unemployment Compensation Board of Review*, 154 Pa.Commonwealth Ct. 486, 624 A.2d 237 (1993).

There is no talismanic percentage figure which separates a substantial reduction from one that is not. *Ship Inn, Inc. v. Unemployment Compensation Board of Review*, 50 Pa.Commonwealth Ct. 292, 412 A.2d 913 (1980). Each case must be measured by its own circumstances. *Id.*

In this case, employer's failure to carry out its part in the agreement resulted in a substantial, unilateral change in the conditions of claimant's employment. Employer's failure to fulfill the new employment agreement resulted in claimant not receiving her increased

wages or payment for child care expenses, totalling a difference of $125.00 per week, or a 33.8% "reduction" in her wages.[2] The board appropriately concluded that claimant's reduction in pay was sufficient to constitute necessitous and compelling cause for claimant to voluntarily terminate her employment.

Employer next asserts that its late payment of wages to claimant did not constitute necessitous and compelling cause for claimant to quit her job. Since we have already determined that claimant had necessitous and compelling cause to voluntarily quit her job because of a substantial, unilateral change in her employment agreement, we need not discuss this issue.

Accordingly, the order of the board granting claimant benefits pursuant to section 402(b) of the Law is affirmed.

### ORDER

NOW, this 2nd day of February, 1995, the order of the Unemployment Compensation Board of Review, dated April 22, 1994, at No. B–324700, is affirmed.

---

2. The agreement between claimant and employer called for a fifty dollar a week pay raise (R. at 43A) plus child care expenses. Prior to the new conditions of employment, claimant earned approximately $245.00 per week based on claimant's stated wage (prior to taxes) of $6.12 per hour. (R. at 9A.) Under the new conditions of employment, claimant's salary would increase to $295.00 per week.

Prior to the new conditions of employment, claimant paid $60.00 per month (or $15.00 per week) for child care, with the remainder of such expenses being paid for by public assistance. (R. at 49A.) Under the new conditions of employment, claimant would no longer be eligible for public assistance for child care because of her increased salary. (R. at 50A.) As a result, her child care expenses would be $75.00–$80.00 per week which would be paid by employer (R. at 49A–50A).

As a result of claimant's salary increase and employer payment of her child care expenses, claimant's overall rate of pay would increase to $370.00 per week, a "gain" of 33.8%.